IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KYMBERLY BROOKE RAMIREZ CLARK and DANIEL JOSEPH
RAMIREZ, *Petitioners*,

*v.*

THE HONORABLE JOSEPH KREAMER, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge*,

CLARENCE CHAO, *Real Party in Interest*.

No. 1 CA-SA 17-0141
FILED 11-14-2017

Appeal from the Superior Court in Maricopa County
No. FC2015051018
The Honorable Joseph C. Kreamer, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Berkshire Law Office, PLLC, Phoenix
By Keith Berkshire, Erica L. Gadberry
*Counsel for Petitioner Ramirez Clark*

Udall Shumway PLC, Mesa
By Jonathan D. Brooks
*Counsel for Petitioner Ramirez*

Artemis Law Firm, PLLC, Scottsdale
By Michelle J. Roddy
*Counsel for Real Party in Interest*

---

**OPINION**

Judge Maria Elena Cruz delivered the opinion of the Court, in which Presiding Judge Randall M. Howe and Judge Peter B. Swann joined.

---

**C R U Z**, Judge:

¶1          Petitioners Kymberly Brooke Ramirez Clark ("Mother") and Daniel Joseph Ramirez ("Ramirez") are respondents in a paternity action filed by Real Party in Interest Clarence Chao ("Chao"). They seek special action relief from the superior court's order setting aside a portion of their consent decree of dissolution ("Decree"), in which Petitioners untruthfully asserted M.R. was Ramirez' child.

¶2          Special action jurisdiction is appropriate because this dispute involves a legal question of statewide importance relating to the best interests of a child. *See* Ariz. R. P. Spec. Act. 1(a); *Alvarado v. Thomson*, 240 Ariz. 12, 14, ¶ 10 (App. 2016). We accordingly accept special action jurisdiction but deny relief.

**FACTUAL AND PROCEDURAL HISTORY**

¶3          In 2004, before Mother's marriage to Ramirez, Mother was involved in sexual relationships with both Ramirez and Chao and became pregnant with M.R. Upon learning of the pregnancy, Chao asked Mother whether he was the father. Mother said Ramirez was the child's biological father, but Chao still asked Mother to contact him after the child was born to tell him whether she looked like Chao. Chao identifies as Asian American with distinct "Asian characteristics" and Mother identifies as Caucasian.

¶4          M.R. was born in February 2005. Mother and Ramirez were unmarried at the time, and no father was identified on M.R.'s birth

2

certificate. After M.R.'s birth, Chao attempted to communicate with Mother, and after some months he was able to ask her whether M.R. looked like him. Saying M.R. was "100 percent" Ramirez' and "doesn't look anything like you at all," Mother insisted Chao was not M.R.'s biological father.

¶5          Mother and Ramirez married in 2007, two years after M.R.'s birth, but they divorced in 2012. Ramirez never adopted M.R., nor did Petitioners ever attempt to modify M.R.'s birth certificate to identify Ramirez as M.R.'s father. Therefore, under Arizona law, during the entirety of Petitioners' marriage M.R. had only one legal parent. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 8-117(A) ("*On entry of the decree of adoption*, the relationship of parent and child and all the legal rights, privileges, duties, obligations and other legal consequences of the natural relationship of child and parent thereafter exist between the adopted child and the adoptive parent as though the child were born to the adoptive parent in lawful wedlock.") (emphasis added), 25-814(A)(3) ("A man is presumed to be the father of the child if . . . [a] birth certificate is signed by the mother and father of a child born out of wedlock."), *partially invalidated on other grounds by McLaughlin v. Jones*, 243 Ariz. 29 (2017). In her petition for dissolution of marriage, Mother falsely acknowledged Ramirez' paternity of M.R. Likewise, Ramirez acknowledged paternity of M.R. in his response. Three months after Mother filed her petition for dissolution of marriage, the superior court issued the Decree, which recognized Ramirez as M.R.'s father, provided him with joint custody, and did not require him to pay child support.

¶6          Mother and Chao did not communicate after Mother told Chao Ramirez was M.R.'s father. However, in 2014, two years after Mother and Ramirez divorced, Chao looked at Mother's social media account and found pictures of M.R. Chao noted that M.R. resembled him and had "Asian characteristics" which he described as a flatter face, lower nose bridge, thick straight jet-black hair, and dark, almond-shaped eyes with epicanthic folds in the corners. Within a week or two of seeing M.R.'s pictures on Mother's social media, Chao emailed Mother to ask again whether M.R. was his daughter. Mother responded, "Yes, I do think you are the biological father. When it first happened I didn't think so, but as she has gotten older she looks a lot like you." Chao stated he would like to be part of M.R.'s life and offered to pay for child support and counseling to properly introduce him to M.R. Initially, Mother agreed and said she would like M.R. to know her biological father.

¶7          Over the next three months, Mother sent Chao pictures of M.R. and stated she was willing to allow Chao to meet M.R., but she said it

was too soon at that time. She also admitted, "I do not think a DNA test is necessary since she looks just like you." Although Mother initially agreed to allow M.R. to complete DNA testing, she did not have M.R.'s DNA tested. Then, three months after first admitting Chao was M.R.'s biological father, Mother told Chao it was a bad time to reunite him with M.R. Chao then petitioned to establish paternity, legal decision-making, and child support.

¶8            After an evidentiary hearing, the superior court found by clear and convincing evidence that Mother had committed a fraud upon the court in her petition for dissolution alleging Ramirez' paternity. It separately found that if not a fraud upon the court, the voluntary acknowledgment of paternity set forth in the Decree was a material mistake of fact pursuant to A.R.S. § 25-812. The court expressly found Ramirez did not engage in misconduct or fraud. It granted Chao's motion to set aside a portion of the judgment pursuant to A.R.S. § 25-812 and Arizona Rule of Family Law Procedure ("Rule") 85(C)(1), resulting in Ramirez' loss of those parental rights he had enjoyed for the two years following the divorce and which he first obtained when Mother untruthfully named him as biological father in the Decree. Petitioners Mother and Ramirez filed a joint petition for special action.

## DISCUSSION

¶9            Petitioners argue the superior court erred in vacating the acknowledgment of paternity in the Decree because the court: (1) used the incorrect legal standard and improperly severed Ramirez' rights after finding him an innocent party; (2) set aside a judgment of paternity in a consent decree based on a material mistake of fact pursuant to A.R.S. § 25-812(E); and (3) vacated Ramirez' judgment of paternity pursuant to Rule 85(C)(1)(f) even though Chao failed to timely request the same or establish an extraordinary circumstance of hardship or injustice.[1]

¶10            We review a superior court's ruling on a Rule 85(C) motion for an abuse of discretion. *Alvarado*, 240 Ariz. at 14, ¶ 11. We review conclusions of law and the interpretations of statutes and rules de novo, and we will affirm the court's findings of fact unless they are clearly erroneous. *Id.*; Rule 82(A). We view the facts in the light most favorable to

---

[1]            The superior court made its finding regarding A.R.S. § 25-812(E), material mistake of fact, as an alternate ruling. Because we affirm the court's fraud upon the court finding, we do not address Petitioners' remaining arguments regarding A.R.S. § 25-812(E) or Rule 85(C)(1)(f).

sustaining the superior court's order, giving "due regard . . . to the opportunity of the trial court to judge the credibility of witnesses." Rule 82(A); *Alvarado*, 240 Ariz. at 13 n.1.

**¶11** Both parties cite *Alvarado* for the proposition that fraud upon the court is fraud which includes "the most egregious conduct involving a corruption of the judicial process itself." *See* 240 Ariz. at 16, ¶ 17 (citing *Lake v. Bonham*, 148 Ariz. 599, 601 (App. 1986)). The petitioners in *Alvarado*, a husband and wife, paid the biological mother of the child in question to list the husband as the child's father in an acknowledgment of paternity, bypassing Arizona's adoption procedures. *Id.* at 13, ¶ 3. This Court affirmed the superior court's determination that intentionally creating and using the fraudulent acknowledgment of paternity constituted a fraud upon the court. *Id.* at 17, ¶ 32.

**¶12** Petitioners argue that because *Alvarado* characterizes fraud upon the court as fraud which includes "the most egregious conduct involving a corruption of the judicial process itself," it is different and more difficult to prove than common law fraud. *See Alvarado*, 240 Ariz. at 16, ¶ 17 (citing *Lake*, 148 Ariz. at 601). They assert the court incorrectly applied "an ignorance of the truth standard" to Mother's conduct, allowing it to find Mother guilty of fraud despite Chao's failure to prove her deliberate intent to defraud the court. Petitioners additionally argue that even if the court applied the proper standard, the standard the court used should not apply to Ramirez because it was inequitable to vacate the Decree recognizing Ramirez' paternal rights when he was innocent of wrongdoing. We disagree.

**¶13** The superior court may set aside a judgment at any time when the moving party proves the judgment was the product of fraud upon the court. *Cypress on Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 299, ¶ 42 (App. 2011); *see also McNeil v. Hoskyns*, 236 Ariz. 173, 177, ¶ 15 (App. 2014) ("[A] party may be entitled to equitable relief from a provision of a dissolution decree that is procured by extrinsic fraud.") (internal quotations and citation omitted). To obtain this relief, the moving party must prove the fraud by clear and convincing evidence. *Lake*, 148 Ariz. at 601. Fraud upon the court occurs "[w]hen a party obtains a judgment by concealing material facts and suppressing the truth with the intent to mislead the court." *Cypress*, 227 Ariz. at 299, ¶ 42. Such fraud damages "the integrity of the judicial process" and is a "wrong against the institutions set up to protect and safeguard the public." *Id.* at 300, ¶ 43 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), *abrogated on other grounds by Standard Oil Co. v. United States*, 429 U.S. 17 (1976)). A fraudulent

acknowledgment of paternity pursuant to A.R.S. § 25-812(D) may constitute a fraud upon the court. *Alvarado*, 240 Ariz. at 16, ¶ 19.

¶14 We disagree that the superior court applied the wrong standard in determining fraud upon the court. Contrary to Petitioners' assertion that the court incorrectly applied "an ignorance of the truth standard" to Mother's conduct, the court correctly applied the clear and convincing standard to find Mother knew before submitting the Decree that Ramirez was not M.R.'s father. Mother therefore "obtain[ed] a judgment by concealing material facts and suppressing the truth with the intent to mislead the court." *Cypress*, 227 Ariz. at 299, ¶ 42. As in *Alvarado*, Mother's fraudulent acknowledgment of Ramirez' paternity allowed Petitioners to avoid court proceedings that would have required a best-interests assessment. *Alvarado*, 240 Ariz. at 16, ¶ 21; *see also* A.R.S. §§ 8-116(A) (requiring a best-interests finding for an adoption), -872(E) (requiring a best-interests finding for a permanent guardianship). Although Petitioners attempt to distinguish *Alvarado*, arguing that unlike the petitioners in that case, Mother sincerely believed her position, the superior court did not find Mother's testimony to this effect credible. "We do not reweigh evidence or determine the credibility of witnesses." *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 92, ¶ 36 (App. 1998).

¶15 We also decline Petitioners' request to apply a different standard than in *Alvarado*. Petitioners argue terminating Ramirez' rights when he was innocent of wrongdoing is inequitable, but they do not identify which parental legal rights Ramirez enjoyed that existed absent Mother's fraud. In Arizona, paternity may be established in several ways, *see* A.R.S. §§ 25-801 to -818, but Petitioners pursued none of these before their divorce and the ensuing Decree, *compare Alvarado*, 240 Ariz. at 15, ¶ 12 (recognizing an acknowledgment of paternity pursuant to A.R.S. § 25-812(A)(1) "is a determination of paternity and has the same force and effect as a superior court judgment" and "is presumed valid and binding until proven otherwise"). Before Mother filed her petition for dissolution and accompanying affidavit, in which the superior court later concluded she falsely asserted M.R. was "born to or adopted by" Ramirez and declared Ramirez the father, Ramirez was, at best, standing *in loco parentis* to M.R.[2] Ramirez is now in that position once more, and, as Chao correctly notes,

---

2 "A person standing *in loco parentis* to a child is one who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation." *Garay Uppen v. Superior Court*, 116 Ariz. 81, 83 (App. 1977).

Ramirez may still seek legal decision-making, placement, and visitation pursuant to A.R.S. § 25-409.[3]

**¶16** Petitioners request attorneys' fees and costs pursuant to ARCAP 21 and A.R.S. § 25-324 due to the unreasonable position Chao adopted in the matter. Chao requests attorneys' fees and costs pursuant to ARCAP 21 and A.R.S. § 25-415(A)(1) because Mother presented a false claim under A.R.S. § 25-403 with knowledge the claim was false. Because the superior court found Mother knew before submitting the Decree that Ramirez was not M.R.'s father, we conclude she presented a false claim under A.R.S. § 25-403 with knowledge the claim was false. We accordingly award attorneys' fees and costs to Chao against Mother upon Chao's timely compliance with ARCAP 21.

## CONCLUSION

**¶17** Accordingly, we accept review but deny relief.



---

[3] A "person other than a legal parent may petition the superior court for legal decision-making authority or placement of the child" if, among other requirements, the person filing the petition stands *in loco parentis* to the child. A.R.S. § 25-409(A). A person other than a legal parent may also petition the court for visitation with the child. A.R.S. § 25-409(C).